UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EMPLOYEE PAINTERS' TRUST, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>PACIFIC NORTHWEST<br>CONTRACTORS, INC., et al.,<br><br>　　　　　Defendants. | CASE NO. C13-05018-BHS<br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION TO DISMISS ALLIANCE DEFENDANTS' COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES |

　　　　This matter comes before the Court on Plaintiff Employee Painters' Trust Health & Welfare Plan, et al.'s ("Trust" or "Plaintiffs") motion to dismiss counterclaim and strike affirmative defenses of Defendants Alliance Window & Door, LLC, David A. Jankanish, and RLI Insurance Company (collectively "Alliance Defendants") (Dkt. 50). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion in part for the reasons stated herein.

## I. PROCEDURAL HISTORY

On January 8, 2013, Plaintiffs filed this action alleging the Alliance Defendants breached a collective bargaining agreement ("CBA") by failing to timely and properly submit reports and/or contributions to the Trusts, and by refusing to submit to payroll compliance audits and/or by failing to pay contract damages, among other claims. Dkt. 1 at 11. Alliance Defendants filed an answer and counterclaims on February 25, 2013. Dkt. 48. Plaintiffs then filed the present motion on March 5, 2013. Dkt. 50. On March 22, 2013, Alliance Defendants filed a response in opposition to the motion. Dkt. 55. Plaintiffs filed a reply on March 29, 2013. Dkt. 60.

## II. FACTUAL BACKGROUND

**A.    Parties and Claims Against Defendants/Counter-Plaintiffs**

Plaintiffs Employee Painters' Trust, Western Glaziers Retirement Fund, District Council No. 5 Apprenticeship and Training Trust Fund, The Painters and Allied Trades Labor-Management Cooperation Initiative and Washington Construction Industry Substance Abuse Programs are express trusts created pursuant to written declarations of trust ("Trust Agreements") between various unions, including the International Union of Painters and Allied Trades District Council No. 5, Glaziers, Architectural Metal and Glassworkers Local No. 188 ("Union"), and various employer associations, including the Western Washington Glass Contractor ("Association"). Dkt. 1 at ¶ 2 ("Complaint"). Defendant Pacific Northwest Contractors, Inc. ("PNC") was a Washington corporation with its principal place of business in Tacoma, Washington, doing business as a general contractor in the state of Washington. Complaint at ¶ 6.

1  Defendant Daniel A. Jankanish ("Daniel Jankanish") was and/or is an officer and
2  decision maker of PNC and an ERISA Fiduciary relating to the payment of contributions
3  to the Trusts.  Complaint at ¶ 8.  Defendant David A. Jankanish ("David Jankanish") was
4  also an officer and/or decision maker of PNC, holding the title of Vice President of
5  Operations.  Complaint at ¶ 9.

6  Defendant Alliance Window and Door, LLC ("Alliance") is a Washington limited
7  liability company with its principal place of business in Milton, Washington, doing
8  business as a contractor in the state of Washington.  Complaint at ¶ 12.  David Jankanish
9  was and/or is a partner/member and decision maker of Alliance.  Complaint at ¶ 14.

10  Defendant RLI Insurance Company ("RLI") is an Illinois insurer and bonding
11  company that issued Bond Number LSM0332863 ("RLI Bond") to PNC for the purpose
12  of paying, among other things, unpaid fringe benefit contributions to the Trusts as set
13  forth in RCW § 18.27.040.  Complaint at ¶ 15.

14  PNC and the Union were parties to various CBA's.  Complaint at ¶ 28.  The
15  Plaintiff Trusts are third-party beneficiaries to the CBA and the Trust Agreements are
16  incorporated therein by reference.  *Id.*  By executing the CBA, PNC promised, among
17  other things, that it would pay fringe benefit contributions to the Trusts on a monthly
18  basis and at specified rates for each hour worked by or paid to its employees for
19  performance of labor covered by the CBA.  Complaint at ¶ 31.

20  Near the end of 2011 or beginning of 2012, Daniel Jankanish and David Jankanish
21  caused PNC to wind down and/or cease operations and started Alliance.  Complaint at ¶
22  43.  Plaintiffs allege that Alliance is the alter-ego of PNC.  Complaint at ¶ 43, 45.  The

1  Plaintiffs further allege that the closing of PNC and opening of Alliance was a mere

2  technical change intended to avoid the obligations of the CBA and Trust Agreements.

3  Complaint at ¶ 44.  Plaintiffs assert that PNC and Alliance have substantially identical

4  management, business purposes, operation, equipment, supervision, and ownership.  *Id.*

5  Plaintiffs brought this action against Alliance Defendants because they allege, as the

6  alter-ego of PNC, Alliance is responsible for all outstanding obligations of PNC.

7  Complaint at ¶ 47.  Furthermore, Alliance is allegedly responsible for abiding by the

8  terms and conditions of the CBA and Trust Agreements as incorporated therein for any

9  covered labor performed by its workers. Complaint at ¶ 48.

10 **B.     Claims against Plaintiffs/Counter-Defendants**

11         Alliance asserts against the Plaintiffs a counterclaim for tortuously interfering with

12 contractual relations and business expectancies.  Dkt. 48 at 13.  Alliance alleges that it

13 takes all reasonable commercial efforts to safeguard its reputation, which is critical to bid

14 and be awarded contracts from public and private entities as well as to its interactions

15 with public and private entities.  *Id.* at 12.  Defendant claims that Plaintiffs' Complaint

16 (Dkt. 1) "makes reckless allegations, including, but not limited to, allegations that David

17 Jankanish and/or Alliance actively collaborated, conspired and/or condoned civil and

18 criminal violations of Washington and federal laws." *Id*.

19         Furthermore, Alliance alleges that the Plaintiffs' allegations were made solely to

20 pressure Alliance through defamation and slander to (1) induce others to terminate their

21 contracts with Alliance, (2) induce Alliance to legitimately fear that others would

22 terminate their contracts with Alliance, (3) induce Alliance to legitimately fear that others

would not renew contracts or engage in future contracts with Alliance, and (4) permanently and irreparably damage Alliance's reputation in the contractor and construction community to ruin future business expectancies with private and public entities. *Id*. at 13. As a result of Plaintiffs' actions, Alliance asserts that it is entitled to costs, attorney fees, and damages.

## III. DISCUSSION

**A.     Motion to Dismiss Counterclaim**

    **1.     Legal Standards**

Under Rule 12(b)(6), a district court must dismiss a complaint or counterclaim if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds, 550 U.S. 544). To survive a Rule 12(b)(6) motion to dismiss, the party making the claim must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## 2. Discussion

The Defendants raise a counterclaim of tortuous interference with contractual relations and business expectancy. Dkt. 48 at 13. Counterclaims must comply with the same pleading requirements as a complaint. Plaintiffs assert in their motion to dismiss that the counterclaim was improperly plead and therefore move the Court to dismiss the counterclaim. Dkt. 50 at 9. In their reply brief, Plaintiffs further assert that as a matter of law, ERISA preempts Defendants' counterclaim. Dkt. 60 at 9. Because Defendants were not given the opportunity to respond to this argument, the Court grants Defendants leave to file a surreply with regard to the preemption issue only. Defendants may file the surreply, not to exceed eight pages, by May 15, 2013.

## B. Motion to Strike Affirmative Defenses

### 1. Legal Standards

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983). At the same time, Rule 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.,* 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). Unless it would prejudice the opposing

party, courts freely grant leave to amend stricken pleadings. *Wyshak v. City Nat'l Bank,* 607 F.2d 824, 826 (9th Cir. 1979); *see also* Fed. R. Civ. P. 15(a)(2).

An affirmative defense may be insufficient as a matter of pleading or as a matter of law. *Sec. People, Inc. v. Classic Woodworking, LLC*, 2005 WL 645592, at *2 (N.D. Cal. 2005). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives the plaintiff *fair notice* of the defense." *Id.* (emphasis added); *Simmons v. Navajo,* 609 F.3d 1011, 1023 (9th Cir. 2010); *Schutte & Koerting, Inc. v. Swett & Crawford,* 298 Fed. Appx. 613, 615 (9th Cir. 2008). Fair notice generally requires that the defendant state the nature and grounds for the affirmative defense. *Simmons*, 609 F.3d at 1023. It does not, however, require a detailed statement of facts. *See Sec. People, Inc.*, 2005 WL 645592 at *2. On the other hand, an affirmative defense is legally insufficient only if it clearly lacks merit "under any set of facts the defendant might allege." *McArdle v. AT & T Mobility, LLC,* 657 F.Supp.2d 1140, 1149–50 (N.D. Cal. 2009), *rev'd on other grounds*, 474 Fed. Appx. 515 (9th Cir. 2012).

**2.     Discussion**

Alliance Defendants list a total of thirteen affirmative defenses[1] in their Answer/Counterclaim. Dkt. 48 at 12. The Plaintiffs move to strike these affirmative defenses under two theories. Dkt. 50 at 3. First, the Plaintiffs argue that the defenses

---

[1] (1) Failure of Plaintiffs to mitigate damages; (2) There is no contractual privity between the Plaintiffs and Alliance and as such Plaintiffs may not prosecute a suit against Alliance's bond; (3) Statute of frauds; (4) Breach of contract; (5) Contributory negligence; (6) Delay by Plaintiffs/Laches; (7) Estoppel; (8) Payment; (9) Prevention of performance by Plaintiff; (10) Set off; (11) Unclean hands; (12) Waiver; and (13) Obligation to participate in Arbitration and/or Mediation. Dkt. 48 at 11-12.

may be stricken because they are barred under the Multi-Employer Pension Plan Amendments Act of 1980 ("MPPAA"). *Id.* Second, Plaintiffs submit that the affirmative defenses may be stricken for Defendants' failure to properly plead the defenses as required by Rule 8(b)-(c). *Id.* For the reasons stated below, the Court hereby strikes each of the affirmative defenses as a matter of law, except that the Alliance Defendants may continue to assert as a defense that "there is no contractual privity between the Plaintiffs and Alliance and as such Plaintiffs may not prosecute a suit against Alliance's bond."

### a. Sufficiency as a Matter of Law

Plaintiffs contend that the Defendants' affirmative defenses are barred as a matter of law. Dkt. 50 at 5. Under Rule 12(f), "'[i]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) *rev'd on other grounds*, 510 U.S. 517 (1994) (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 711 (1990)). "A defense that would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Nev. Fair Housing Center, Inc. v. Clark County*, 565 F. Supp. 2d 1178, 1187 (D. Nev. 2008) (citing 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1381 (3d ed. 2004)).

Congress enacted Section 515 of the Employment Retirement Security Act ("ERISA"), codified at 29 U.S.C. § 1145, for the specific purpose of preventing trust fund collection actions from spiraling out of control into "lengthy, costly and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 87

(1982). Circuit courts of appeals have held the defenses available to employers in general breach of contract actions are not available in trust fund collection actions. *See Mackillop v. Lowe's Market,* 58 F.3d 1441 (9th Cir. 1995); *Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir. 1986) ("For reasons of public policy, traditional contract law does not apply with full force in actions brought under ERISA to collect delinquent trust fund contributions); *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018 (4th Cir. 1997); *Connors v. Fawn Mining Corp.*, 30 F.3d 483 (3d Cir. 1994).

The Third Circuit has held that employers have "only three recognized defenses: (1) the pension contributions themselves are illegal; (2) the collective bargaining agreement is void *ab initio*, as where there is fraud in the execution, and not merely voidable, as in the case of fraudulent inducement; and (3) the employees have voted to decertify the union as its bargaining representative, thus prospectively voiding the union's collective bargaining agreement." *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (internal citations omitted). The Second Circuit has held that employers have only two defenses in trust fund collection actions and those defenses are "(1) the pension contributions themselves are illegal, and (2) that the collective bargaining agreement is void (not merely voidable)." *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2nd Cir. 1990). The Ninth Circuit has held that "[u]nder *Benedict Coal*,[2] the 1980 statute, and *Kaiser Steel*, a defense is properly allowable when it related to a promise to

---

[2] 361 U.S. 459 (1960)

make contributions that is illegal." *S. Cal. Retail Clerks Union v. Bjorklund*, 728 F.2d 1262, 1266 (9th Cir. 1984).

While the Plaintiffs are correct that the defenses allowed in ERISA trust fund collection actions are substantially limited, it must first be determined that the Alliance Defendants are legally bound by the terms of the CBA. In the Complaint, the Plaintiffs allege that Alliance is the alter ego of PNC – the employer bound by the terms of the CBA. Dkt. 1 at ¶ 45-47. The Alliance Defendants deny this allegation and assert as an affirmative defense that Alliance is not in fact the alter ego of PNC, and therefore is not bound by the terms of the CBA. Dkt. 48 at 11 ("There is no contractual privity between the plaintiffs and Alliance and as such Plaintiffs may not prosecute a suit against Alliance's bond."). Consequently, the Court denies the Plaintiffs' motion to strike with regard to the defense involving privity of contract.

The "alter ego" theory requires a threshold showing that the Alliance Defendants and PNC constitute a single employer. *UA Local 343 United Ass'n of Journeymen & Apprentices, et al. v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). "The criteria for determining whether two firms constitute a single employer are (1) common ownership, (2) common management, (3) interrelation of operations, and (4) centralized control of labor relations. *Id.* This determination is highly fact specific.

Based on the information before the Court, it cannot determine as a matter of law that Alliance is the alter ego of PNC; however, such a determination could lead to only two results. Either Alliance is the alter ego of PNC or it is not. Under each outcome, the remaining twelve affirmative defenses must be stricken. If Alliance is shown to be the

alter ego of PNC, and therefore bound by the terms of the CBA, the Court would strike the Alliance Defendants' affirmative defenses as required by section 515 of ERISA and as set forth in the relevant case law.  Similarly, if it is determined that Alliance is not the alter ego of PNC, the remaining twelve affirmative defenses would not apply because the Alliance Defendants simply would not be bound by the terms of the CBA.

Because each outcome leads to the same result, it is not necessary for the Court to determine at this time that Alliance is or is not the alter ego of PNC in order to rule on the motion to strike the affirmative defenses.  Therefore, the Court strikes the following affirmative defenses as a matter of law and with no leave to amend: (1) Failure of Plaintiffs to mitigate damages; (2) Statute of Frauds; (3) Breach of contract; (4) Contributory negligence; (5) Delay by Plaintiffs/Laches; (6) Estoppel; (7) Payment; (8) Prevention of performance by Plaintiff; (9) Set off; (10) Unclean hands; (11) Waiver; and (12) Obligation to participate in arbitration and/or mediation.  The Court cannot, however, strike as a matter of law the affirmative defense relating to contractual privity, namely that "[t]here is no contractual privity between Plaintiffs and Alliance and as such, Plaintiffs may not prosecute a suit against Alliance's bond." Dkt. 48 at 11.

### b.    Pleading Sufficiency of Affirmative Defenses

As discussed above, the Ninth Circuit has directed courts to evaluate the pleading sufficiency of affirmative defenses under the "fair notice" standard.  *Wyshak*, 607 F.2d at 824.  In their motion, Plaintiffs allege that the Defendants merely state the possible defenses by name, but provide no factual information to support such defenses, ultimately leaving the Plaintiffs without fair notice.  Dkt. 50 at 5.  Because the Court has stricken all

1  but one of the affirmative defenses, it is only necessary to evaluate the sufficiency of the

2  pleading with regard to the remaining affirmative defense.

3        The Court does not agree with the Plaintiffs that the Defendants' remaining

4  affirmative defense is insufficient to provide "fair notice."  *See Wyshak*, 607 F.2d at 824.

5  The Alliance Defendants' pleading need not be supported by detailed factual allegations,

6  but must at least give notice of the grounds upon which it rests.  It is clear that the

7  Plaintiffs have been provided "fair notice" that the Alliance Defendants will defend this

8  action based on the assertion that Alliance is not bound by the terms of the CBA because

9  there is no contractual privity between the Plaintiffs and Alliance and it is not the alter

10  ego of PNC.  Therefore, with respect to this affirmative defense, the Court denies the

11  Plaintiffs' motion to strike.

12                                      **IV. ORDER**

13        Therefore, it is hereby **ORDERED** that Plaintiffs' motion to dismiss the Alliance

14  Defendants' counterclaim and strike the Alliance Defendants' affirmative defenses (Dkt.

15  50) is **GRANTED IN PART** and **DENIED IN PART**.  The Defendants may file a

16  surreply by May 15, 2013.  The motion will be renoted for the same day.  If the

17  Defendants fail file a surreply, the Court will dismiss the counterclaim without further

18  notice to the parties.

19        Dated this 24th day of April, 2013.

20

21                                             BENJAMIN H. SETTLE

22                                             United States District Judge